May it please the Court, I'm Robert Burke, the Office of the State Defense Defender. I represent the defendant Donald Miller. We're asking this Court to reverse his conviction. I want to say, first of all, Your Honors, I've never had children. And I've never had children. I did not know until I got this case and started reading about it that a baby could die if it was put – a small baby could die if it was put to sleep on its stomach. And I think really that kind of gets into the whole issue in this case, and it was the issue below, it was the issue that bothered Judge Knapp, and that's causation. The pathologist testified that the child had a number of scratches, quite a few scratches, but that those scratches did not contribute to the death. And the child had bruises on its head, underneath its arms, on its buttocks, and the child's name was Ashton. That did not contribute to Ashton's death. Really, it was Milou, all kinds of things like that, that made her think that it was a homicide. But Milou is not a cause of death. There was no one thing she could point to. I want to kind of get off track here and talk about the state in its brief says that maybe Mr. Miller woke up in the middle of the night, got out of bed, went to where Ashton was sleeping, and murdered Ashton. That theory was not presented below. We were not allowed to defend against that theory below. We couldn't cross-examine the mother who was asleep in the bed with him about what may have happened that night, whether she was a light sleeper or a heavy sleeper. Because that was not presented below, we haven't had a notice, an opportunity to defend. So we'd ask the court to disregard this new theory of how Ashton died, that Mr. Miller got up during the middle of the night and intentionally murdered him. What about the testimony in the record about the defendant putting a pillow over the head of this child? Is that a basis for the jury in its determinations evidentiary and as to credibility to make a determination as to guilt? Well, Your Honor, I believe that that happened in the bedroom. And Ashton was laid down to sleep out in front of the bedroom where there was a couch. That happened in the bedroom. And I believe that Ashton's mother testified that the pillow was placed lightly over Ashton's head. It was not pushed down with any great force to muffle any cries of his. Then he was picked up, taken out of the couch by the mother and she laid him down and he was alive when she put him down. And she said that he scooted up sometime after then she went back to bed, or after she went to bed. If there was a pillow over his head, and the evidence is there was a pillow over his head, when Mr. Miller struck him on the buttocks, that is not a cause of death. He was still alive and breathing when she took him out of the couch and laid him down to sleep on his face in the corner of the couch. A few years ago I had the opportunity to do some work with Judge Knapp when she was a prosecutor and I have tremendous respect for her. And I have, from what I've seen, I have tremendous respect for her as a judge. She had the same kind of problems with this case that I have. And I want to read just a few sentences, not in depth, but what she said at sentencing and at the motion to reconsider sentence when she lowered the sentence. She said Dr. Nandouri would ask about each of the injuries to Ashton, the injury to his head, the injury to his ribs, the injury to his buttocks, and specifically Dr. Nandouri said no, those injuries would not have caused his death. If it had put those in the totality of the circumstances, that was not a cause of his death. She also said what became important to this court was that those injuries and then Ashton being laid face down, he died, a contributing factor to his death. And I believe Ashton was abused without question, but the battery and murder were different things. Then at the motion to reconsider sentence, she said, well, I'm sorry, still yet at the sentencing, she said I don't think that you did contemplate death, but you certainly should have if you're going to strike a three-month-old child. And she went on to say then at the reconsideration, it is unconverted, uncontroverted that later on it was Heather Smith who laid the baby on the couch face down. It's a sad thing when a baby dies, but Mr. Miller did not kill that baby. I'm not sure under this evidence that the state even proved there was a murder. I believe that it was an unintentional homicide that the baby died accidentally from suffocating on the couch. And that's why we're asking the court to reverse the conviction. Are there any questions, Your Honor? I don't believe so. Thank you. Thank you, Counsel. Counsel? There's a motion to strike that's taken with this case. I just want to say a couple of things about that. This is a court of review, and its review is to be based on the record made below. It's well settled that this is not a court that receives evidence. And in this case, what the defendant is trying to do by his own argument is to provide support for the argument that Ashton's death was not connected to injuries that he had. This is new evidence. This court is precluded from hearing it and from letting the defendant just merely append new evidence on the issue of reasonable doubt to his brief on appeal. If people ask, the motion to strike be granted. Now, as to reasonable doubt, there are times when I wonder if the defendant has read the same record I have, because this is no close case. This is overwhelming evidence of a murder. The defendant's theory below was that it was an accidental death, an accidental suffocation. I don't know how the state can go about rebutting that except to discuss the fact that it was an intentional and knowing act. So their complaints about our addressing the lack of accident is really rather specious. Ashton was three months old when he was murdered. At two weeks of age, he went to live with his aunt and uncle for three weeks to one month. So for three weeks to one month of that time period of his short three-month life, the defendant didn't have access to him. But in the little over two months that he did have access to this child, it shows a pattern of abuse that is appalling. It shows that he asphyxiated him on many occasions. He beat him. Let's talk. One month, three weeks shortly after they got the child back from the aunt and uncle, the defendant hit Ashton in the face, causing a black eye. This is witnessed, it's testified about, and there's a picture in the record. The People's Exhibit 15. He told everybody to say that it was a dog that did it. There was testimony by Chad Reynolds that he'd observed injuries on Ashton quite often. There was testimony about bruises across the child's forehead in little circles that looked like someone had put fingertip pressure on his forehead. There was another incident where the defendant said he caused bruises and said that Ashton had fallen out of a swing. This was three weeks before his death. The picture, People's Exhibit 13, at this time, three weeks before his death, shows a bruise under his eye, a bruise on his forehead, and scratches on his face and his nose. Very much like the scratches that Randuri observes later at the autopsy. Why did the defendant have such animosity toward this child? It was explained. He did not believe this child was his and that his wife had been unfaithful. And from the very beginning, he had a motive to mistreat this child and did so often. He also shook Ashton twice before his death. He also had a five-year history of beating the child's mother. She had been observed by other people with black eyes on eight to ten occasions. And on the occasion, the day after the murder where she's interviewed, she appears again to have a black eye. The defendant did heroin. And he was on heroin the night of this murder. And so was the mother. But a couple of days before Ashton was found dead, the aunt and uncle that they were living with at this time in the upstairs found Ashton face down and had trouble breathing. And he did warn them not to place the child face down. So they knew they shouldn't place the child face down. What does that have to do with the story? I'll tie that in in a minute. On the night of the murder, they had obtained heroin and they'd both taken it and they'd retired early at eight o'clock. And in the bedroom was Ashton and his older sister, Emily. Ashton had acid reflux and colic and he was a fussy child. He was hard to comfort. And he was crying that night. And Heather could not get him to stop crying. And when that happened, the defendant took Ashton from her arms and shook him hard and told him to shut up and that he couldn't stand it. But Ashton kept on crying. Then the defendant put his hand over Ashton's face and Ashton began to cry hard and tried to catch his breath from being shaken. She told the defendant to stop and at that point he put the baby face down on the bed. This is a three-month-old child and he placed a pillow over his head. Now, I don't recall her ever saying that the pillow was placed lightly over the baby's head. But I do recall the testimony where when she picks him up from this occasion, he's breathing hard and he's trying to catch his breath. So obviously the pillow was causing him difficulty in breathing, whether it was placed lightly or not pressed down at all. He was being suffocated. And while he was in that position, the defendant punched him hard in the buttocks. The mother wanted to take Ashton downstairs and separate him from the defendant, but the defendant would not permit it. So she took him in and put him face down on the couch in the next room and covered him up with a blanket. And she didn't hear him cry again. Now, what Raj Nanduri testified to was that all of the bruises this child had, the scratches, the abrasions, the bruises, the bruises on his ribcage where he'd been crushed, the bruises on the top of his head, all of these bruises occurred within ten minutes of his death. He didn't live long after Heather put this child down on the couch. He died somewhere between ten o'clock and midnight. The defendant himself indicated that Ashton was strong. A strong baby, he could roll over and he could move his head back side to side. Even the defendant himself gave evidence that was antithetical to a suffocation by accident. Because this child could move his head from side to side and he could roll over. She didn't hear him cry like he usually did in the night. She woke up between 4 and 4.30 and she thought it was odd. The baby hadn't waked up and cried for his bottle. But since it was quiet, she stayed in bed for 15 to 20 minutes longer. And when she started to get up, the defendant made the comment to her, well, I hope he's not dead. When she got there, she found him. He was dead. He was quite dead. He was buried in the cushions. The defendant didn't go and see. He just ran downstairs. And he did not come back and check on Ashton. When ultimately at paramedics direction over the phone, she's applying CPR to Ashton. He tells her to leave him the fuck alone. He didn't want this baby revived. He wanted him dead. When the paramedics arrived and the child was obviously gone and there would be no resuscitation, they got permission not to resuscitate him. And the defendant showed no emotions. Still, he had a cold look on his face. The baby's injuries told the tale of his murder. The abrasions that were on his face and his neck were caused by a fingernail with great pressure. And they indicated a suffocation by someone, by a person. Now, oh, by the way, the defendant, when he was asked if he killed Ashton, said, I was fucked up, but I know I killed him. So we have an admission. They also have an admission of the defendant to a fellow inmate who demonstrated how he covered the child's face. All of these things. This is this is overwhelming. But but the but the the autopsy and the baby's injuries show suffocation, asphyxiation by a person who had suffocated him. It wasn't an accident. I don't believe so. Thank you, Counsel. Counsel. The state says this was no close case. The question that raises in my mind is then why try a new theory on appeal to save this conviction? Why say this was an intentional murder sometime during the middle of the night instead of sticking with the actual facts of the case? Well, the counsel also says that the mother, Heather, knew not to place the baby face down. Well, Mr. Miller was in bed when she went up to the couch to place the baby face down. Whether she knew or did not know, that has nothing to do with him being asleep in the bed. She questions my statement of facts about the pillow resting on the baby's head and not being pushed down. That's found at page 494 in the record. She also misquotes the jailhouse snitch who she says said that my client, Mr. Miller, said, I know I killed him. That's at page 733 in the record. What he said was, I know I did. Now, those are not the same things. Killed him sounds a whole lot worse. The state is trying to make this case sound worse than it is. And like I said earlier, it's a sad case. Then one thing I want to point out that the state did not argue, and that is this case, Wooters, and how the statute on the murder of a child under 12 is unconstitutional and so he needs to be put in prison, Mr. Miller needs to be put in prison for life or something like that. I took a look at Westlaw and I took a look at the Appellate Defender Brief Bank that has all our briefs and all the state's briefs statewide. And this is the only court where the state raises that argument. They raise it over and over and over again. And it's always ruled against them. Nobody else in the State Appellate Prosecutor's Office statewide will raise that argument. If you look at the actual bills that the state is talking about and see how they are underlined and struck through, you understand that the state has no argument. Really, it's frivolous. Are there any other questions, Your Honor? I don't believe so. Thank you. Thank you, Counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement and take it to court.